# In The United States District Court
## for the Southern District of Georgia
## Brunswick Division

GUY J. CARRIER and JACQUELYN A.  *
CARRIER,                         *
                                    *
     Plaintiffs,          *
                                    *
     v.                   *      CV 208-068
                                    *
TIM JORDAAN and AVENTURE      *
CATAMARANS, LIMITED,        *
                                    *
     Defendants.         *

## ORDER

Presently before the Court is Plaintiffs Guy J. Carrier and Jacquelyn A. Carrier's Motion for Default Judgment and/or Summary Judgment. Upon due consideration, the Motion for Default Judgment and/or Summary Judgment is **GRANTED** in part as to Defendant's liability only; a damage award is deferred until the conclusion of a hearing on damages.

**BACKGROUND**

The facts underlying this dispute are set forth in the Order granting the Carriers' motion for entry of default. (See Dkt. No. 60) To summarize, Guy J. Carrier and Jacquelyn A. Carrier ("the Carriers") claim that they purchased a fifty-foot Aventure Power Catamaran ("the Vessel") from

Defendants Tim Jordaan ("Jordaan") and Aventure Catamarans, Limited ("Aventure") in Florida on or about May 17, 2008. (Compl. ¶ 5, 10.) As the Carriers transported the Vessel to Virginia from Florida on its maiden voyage, the Vessel began taking on water and sank off of the coast of Brunswick, Georgia. (Id. ¶ 12.) According to the Carriers, as a result of the sinking, the Vessel is a "constructive total loss." (Compl. ¶ 14.)

The Carriers filed suit against Defendants in this Court on June 6, 2008, based on the following theories: (1) breach of express warranty; (2) breach of implied warranties of merchantability and fitness for a particular purpose; (3) breach of warranty under the Magnuson-Moss Warranty Act; (4) negligence and negligent infliction of emotional distress; (5) strict liability; and (6) fraud and violations of the Florida Unfair and Deceptive Trade Practices Act. (See Compl. ¶ 15-53.)

Defendants, represented by attorneys J. Michael Pennekamp and David Sipple, filed a motion to quash service and to dismiss the Carriers' Complaint for insufficient service of process and lack of personal jurisdiction. (Dkt. No. 9.) The Court denied that motion on October 17, 2008. (Dkt. No. 23.) Defendants then filed an answer on November 26, 2008. (Dkt. No. 28.)

On August 4, 2009, attorneys Pennekamp and Sipple filed motions to withdraw as counsel for the Defendants, which the Court granted on August 7, 2009. (Dkt. Nos. 45, 46.) Because Aventure is a limited liability company that can only appear in federal court through licensed counsel, see 28 U.S.C. § 1654; Rowland v. Cal. Men's Colony, 506 U.S. 194, 202 (1993), the Court ordered it to retain counsel within thirty days of the entry of the orders and warned Aventure that failure to do so may result in default. (Dkt. Nos. 45, 46.) Aventure failed to retain counsel within the stated time period. The Court then issued an order on September 15, 2009, directing Aventure to show cause why it should not be held in contempt of court. (Dkt. No. 49.) Defendant Jordaan, purporting to respond on behalf of Aventure, sent a letter to the Clerk of Court on September 22, 2008. (Dkt. No. 50.) In that letter, Jordaan stated that he had no intention to hire counsel to represent either himself or Aventure.[1] (Id. at 3.)

On October 15, 2009, the Clerk of Court sent notice to Defendants informing them that a status conference was scheduled for December 3, 2009. (Dkt. No. 52.) Defendant

---

[1] Defendant Jordaan's letter failed to comply with several local rules. The Clerk of Court sent both Defendants a deficiency notice on September 22, 2009, warning them that continued noncompliance with local rules could result in sanctions, including dismissal. (Dkt. No. 51.) Even though the notice requested that Defendants send in a corrected response, Defendants failed to do so. (Id.)

Jordaan responded in a letter to the Court that neither he nor Aventure would attend the conference, and indeed, neither party appeared nor was represented by counsel at the conference. (Dkt. No. 54.)

After Defendants failed to attend the December 3 conference, Plaintiffs filed a Motion for Entry of Default on December 23, 2009. (Dkt. No. 55.) The Court granted the motion on January 20, 2010, and the Clerk entered a default as to Defendants on January 21, 2010. (Dkt. No. 61.) Plaintiffs then filed the instant Motion for Default Judgment and/or Summary Judgment[2] on February 9, 2010.

Defendant Jordaan sent two letters to the Court in response to Plaintiffs' present motion. In the first letter, dated March 22, 2010, Jordaan disputed some of the underlying facts of the case and reiterated his claim that Defendants are not subject to the jurisdiction of the Court. (Dkt. No. 66.) In the second letter, dated April 7, 2010, Jordaan again disputed facts of the underlying case and repeated his claim that the Court lacked jurisdiction over Defendants. (Dkt. No. 67.)

---

[2] Because Plaintiffs move for summary judgment on the basis of the entry of default against Defendants, Plaintiffs' Motion for Default Judgment and/or Summary Judgment is treated as a single motion for default judgment. See Langsfeld v. Wynne, No. 1:08-CV-0225-JOF, 2009 WL 383395, (N.D. Ga. Feb. 12, 2009)(applying default judgment standards where plaintiffs moved for summary judgment based on entry of default against defendants).

**DISCUSSION**

By its terms, Rule 55 contemplates two steps before entry of a default judgment. <u>Peterson v. Donald</u>, No. CV 306-046, 2006 WL 3078938, at *1 (S.D. Ga. Oct. 25, 2006)(citing <u>Dahl v. Kaanawha Inv. Holding Co.</u>, 161 F.R.D. 673, 683 (N.D. Iowa 1995)).

First, the party moving for a default must have the Clerk enter the default by showing that the defaulting party "has failed to plead or otherwise defend" as provided by the Rules. Fed. R. Civ. P. 55(a). Second, a moving party may seek entry of a default judgment under Rule 55(b).

In this case, Plaintiffs filed a Motion for Entry of Default under Rule 55(a) on December 23, 2009. (Dkt. No. 55.) The Court granted that motion and ordered an entry of default as to Defendants on January 20, 2010. (Dkt. No. 60.) At issue here is Plaintiffs' Motion for Default Judgment pursuant to Rule 55(b).

The party moving for default judgment is not "entitled to a default judgment as of right." 10A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2685 (3d ed. 1998). Under Rule 55(b), a defaulting party that has appeared is entitled to notice of a default judgment motion and is granted an opportunity to "show cause to the court why a default judgment should not be entered or why the

requested relief should not be granted." Id. Upon receiving notice of Plaintiffs' present motion, Defendant Jordaan responded in two letters to the Court — ostensibly on behalf of himself and Aventure — that did not even attempt to show cause as to why a default judgment should not be entered against Defendants. (Dkt. Nos. 66, 67.)

Even where a defaulting party has failed to show cause, however, the defaulting party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Accordingly, before entering a default judgment for damages, the Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, No. 05-16180, 2007 WL 542583, at *2 (11th Cir. Feb. 22, 2007); see also Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277-78 (11th Cir. 2005). In short, plaintiffs must present "well-pleaded factual allegations," rather than mere conclusions of law, that are "sufficient to establish liability in the wake of an entry of default." Cotton, 402 F.3d at 1278.

**JURISDICTION AND GOVERNING LAW**

Plaintiffs' Complaint correctly states that the Court has federal question jurisdiction over the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331. (Compl. ¶ 8.) Less clear, however, is the proper jurisdictional basis for Plaintiffs' common law claims. Plaintiffs' Complaint states, "[t]his is an admiralty and maritime case between parties of diverse citizenship which exceeds $75,000," such that the Court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1332 and 1333. (Id.) Plaintiffs do not clarify whether their common law claims are based on state or admiralty law.

As a general rule, where a party has alleged both diversity of citizenship and admiralty jurisdiction, "if admiralty jurisdiction . . . exists, federal maritime law governs the substantive issues of the case." Lady Di Fishing Team, LLC v. Brunswick Corp., No. 3:07-cv-402-J-33TEM, 2007 WL 3202715, at *3 (M.D. Fla. Oct. 29, 2007). In other words, where admiralty jurisdiction exists, federal admiralty law will govern the substance of a claim, regardless of whether the plaintiffs have alleged admiralty and diversity as concurrent bases of jurisdiction.

1.    **Product Liability and Negligent Infliction of
      Emotional Distress Claims**

Plaintiffs claim that Defendants, as sellers and
manufacturers of the Vessel, should be held strictly liable
for damages arising from the Vessel's loss. (Compl. ¶ 51.)
Plaintiffs also claim that Defendants were negligent in
designing, manufacturing, assembling, and inspecting the
Vessel, which (1) caused damage to the Vessel and other
property and (2) inflicted emotional distress on Plaintiffs.
(Compl. ¶ 42-44.)

A tort falls under federal admiralty jurisdiction where
(1) the tort occurs on navigable waters and (2) the tort is
connected with maritime activity. <u>Jerome B. Grubart, Inc. v.
Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995); <u>see
also</u> <u>Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.</u>, No.
8:09-CV-607-T-27MAP, 2010 WL 1223126 *2 (M.D. Fla. March 25,
2010).

That the faulty escape hatch allegedly caused injury to
the Vessel while the Vessel was in navigable waters, off the
coast of Brunswick, Georgia, satisfies the location
requirement for admiralty jurisdiction. <u>See Fed. Ins. Co.</u>,
2010 WL 1223126, at *2 ("The fire suppression system is
alleged to have caused injury to the vessel while on
navigable waters, therefore satisfying the location

requirement."). The "connection requirement" is satisfied where the injury had "a potentially disruptive impact on maritime commerce" and "the general character of the activity giving rise to the incident [must] show a substantial relationship to traditional maritime activity." Jerome B. Grubart, Inc., 513 U.S. at 534. Here, Plaintiffs allege in their complaint that the "design, manufacture, assembly, outfitting and installation" of the Vessel and its parts caused the Vessel to sink, which could have caused an accident with commercial boats or required rescue from a commercial boat. See Fed. Ins. Co., 2010 WL 1223126, at *2 (finding that first prong of "connection requirement" was satisfied where yacht caught on fire because fire could have "caused the yacht to sink, posing a hazard for commercial navigation."). The "traditional maritime activity" requirement is also met in this case because the Vessel "was navigating on navigable waters, a traditional maritime activity." Id. See also Mink v. Genmar Indus., Inc., 29 F.3d 1543, 1546 (11th Cir. 1994). Even though the "design, manufacture, assembly, outfitting and installation" that allegedly caused the Vessel's sinking occurred on land, the alleged torts satisfy the requirements for federal admiralty jurisdiction. Fed. Ins. Co., 2010 WL 1223126, at *2 (finding admiralty jurisdiction, even where the alleged torts took

place on land because "[t]he defect could not have manifested itself, and the injury could not have occurred until the vessel was actually operated as a vessel in operation" (quoting <u>Mink</u>, 29 F.3d at 1546)). The product liability claims in this case are thus governed by federal admiralty law.

In considering strict liability claims under admiralty law, circuit courts have turned to Section 402(A) of the <u>Restatement (Second) of Torts</u>. <u>See</u> <u>Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co.</u>, 565 F.2d 1129, 1135 (9th Cir. 1977)("[S]ince Section 402-A . . . is the best and most widely-accepted expression of the theory of strict products liability, we accept 402-A as the law of products liability in this circuit, at least for this case arising in admiralty.").

Section 402(A)(1) states the following:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:
>
> (a)  the seller is engaged in the business of selling such a product, and
>
> (b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Plaintiffs' Complaint properly alleges a strict liability claim against Defendants under Section 402(A)(1). The Complaint clearly alleges that Defendants sold the Vessel in a defective condition unreasonably dangerous to the user or consumer, stating, "it was discovered that the bulkheads were not watertight" and that "the hatch of the underside of the hull . . . was not properly secured, a condition which rendered the vessel unseaworthy and unfit for its intended purpose." (Compl. ¶ 13.) Moreover, the Complaint alleges numerous times that Defendants were engaged in the "distribution and sales" of similar vessels. (Compl. ¶ 4.) Finally, the Complaint alleges that "[a]t the time Defendants sold the vessel, it expected the vessel to reach users or consumers such as the Carriers without substantial change in the condition in which it was sold" and that the "vessel did reach the Carriers without substantial change in the condition in which it was sold by Defendants." (Compl. ¶ 49-50.)

Plaintiffs thus state a well-pleaded substantive product liability claim under strict liability. Because Plaintiffs have established their product liability claim under strict liability, it is unnecessary for the Court to consider Plaintiffs' negligence claim, which also sounds in product liability.

While Plaintiffs successfully state a substantive claim, Plaintiffs' product liability remedies in this case are limited to damages for the personal property lost as a result of the Vessel's sinking. Under admiralty law, the "economic loss rule" applies to product liability actions, such that the plaintiffs cannot recover for damage to the product itself. See Fed. Ins. Co., 2010 WL 1223126 at *2-3. Plaintiffs may, however, recover for personal property added after purchasing the product and may recover damages for the value of the product itself under a separate warranty claim. Id.

Plaintiffs additionally claim that as a result of Defendants' failures in designing, manufacturing, and inspecting the Vessel, they suffered emotional distress, such that Defendants are liable for negligently inflicted emotional distress. (Compl. ¶ 45.)

Under federal admiralty law, recovery for the negligent infliction of emotional distress is permitted only (1) "for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct" or (2) to plaintiffs who were "placed in immediate risk of physical harm by that conduct." Tassinari v. Key West Water Tours, L.C., 480 F. Supp. 2d 1318, 1323 (S.D. Fla. 2007). Although the law is somewhat unsettled, a "physical

manifestation of emotional injury" must generally be present where there is no physical impact. Id. at 1325.

In the Complaint, Plaintiffs merely state that the incident "inflict[ed] emotional distress upon Plaintiffs." (Compl. ¶ 45.) Plaintiffs do not allege that they sustained a physical impact. Implicitly, Plaintiffs allege that they bore a risk of physical harm to the extent that they were on the Vessel when it began taking on water, but they do not allege that they suffered any physical manifestation of emotional injury. Plaintiffs thus fail to state a claim for negligent infliction of emotional distress.

### 2. *Warranty Claims*

The Plaintiffs claim that Defendants breached express and implied warranties created in connection with the sale of the Vessel.

In general, "a contract for the sale or construction of a ship is not within the federal courts' admiralty jurisdiction." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1166 (11th Cir. 2009). Thus, "warranty claims grounded in contracts for the construction or sale of a vessel are outside admiralty jurisdiction." Fed. Ins. Co., 2010 WL 1223126, at *4 (citing E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872 n.7 (1986)). Since the

warranty claims in this case arise from the sale of the Vessel, the claims are within the diversity jurisdiction of the court and are governed by state, rather than admiralty, law.

A federal court sitting in diversity must apply the choice of law of the state in which it sits. <u>See</u> <u>Klaxon Co. v. Stentor Elect. Mfg. Co.</u>, 313 U.S. 487 (1941). Thus, the Court here will apply Georgia choice of law rules. Under Georgia's rules, "tort actions are adjudicated according to the law of the place where the wrong occurred, and contract actions are regulated by the law of the state where the contract was made when matters of execution, interpretation, or validity are at issue, and by the law of the state where it is to be performed when the issue is one concerning performance." <u>Wallace v. Harrison</u>, 304 S.E.2d 487, 489 (Ga. Ct. App. 1983). Here, express and implied warranties in connection with a contract for the sale of the Vessel are at issue, such that the law of the place where the contract was made or performed should govern.[3] The contract was made in Florida. Moreover, performance of the contract — sale of the Vessel — was completed in Florida. Thus, Florida law should

---

[3] Whether breach of warranty should be treated as a tort or contract action is unclear under Georgia choice of law rules. Because the warranty claims here arise from a contract of sale, this Court finds that the actions sound in contract law. <u>See</u> <u>Gilbert v. Monaco Coach Corp.</u>, 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004)(finding that breach of warranty should be treated as contract action for purposes of Georgia choice of law rules).

apply. See Gilbert v. Monaco Coach Corp., 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004)(applying Arizona law to breach of warranty claims arising from sales contract of vehicle, where sales contract was negotiated in Arizona and buyers accepted delivery of vehicle in Arizona).

    *i.   Breach of Express Warranty*

To state a claim for a breach of warranty under Florida law, a plaintiff must establish the following: "(1) [f]acts in respect to the sale of the goods; (2) identification of the types of warranties created . . . (3) [f]acts in respect to the creation of the particular warranty . . . (4) [f]acts in respect to the breach of the warranty; (5) [n]otice to seller of breach; [and] (6) [t]he injuries sustained by the buyer as a result of the breach of warranty." Breakstone v. Caterpillar, Inc., No. 09-23324-CIV, 2010 WL 2164440, at *3 (S.D. Fla. May 26, 2010) (quoting Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So. 2d 351, 353 (Fla. 4th Dist. Ct. App. 1977)).

Plaintiffs' Complaint properly alleges each required element. First, the Complaint clearly provides facts alleging that a sale of goods – in this case, the Vessel — took place. Second, the Complaint identifies the alleged warranty as "express." (Compl. ¶ 16.) Third, the Complaint

sets forth facts regarding the creation of the warranty, stating:

> At all material times, Defendants actively represented to the public, including the Carriers, that the vessel was an ocean going motor yacht capable [of] withstanding ordinary seagoing conditions. Such representations created an express warranty.

(Compl. ¶ 16.) Fourth, the Complaint establishes a breach of the terms of the express warranty to the extent that it alleges that the improper manufacture, design, and installation of the Vessel's escape hatch made the Vessel anything but "capable [of] withstanding ordinary seagoing conditions." Finally, the Complaint states that the Plaintiffs notified the Defendants of the breach and that as a result of the breach, have sustained damages, including the "loss of the vessel" and "the loss of personal property on board the vessel." (Compl. ¶ 21.)

     ii.   *Breach of Implied Warranty*

Plaintiffs additionally state a claim for breach of implied warranty. Under Florida law, the elements of an implied warranty claim are: "(1) that the Plaintiff was a

foreseeable user of the product, (2) that the product was being used in the intended manner at the time of the injury; (3) that the product was defective when transferred from the warrantor; and (4) that the defect caused the injury." Yost v. Stryker Corp., No. 2:09-cv-28-FtM-29DNF, 2010 WL 1141586, at *4 (M.D. Fla. March 23, 2010).

The Complaint clearly establishes that Plaintiffs were foreseeable users of the Vessel, given that they purchased it from Defendants. Moreover, the Complaint alleges that the Vessel was being used in the intended manner at the time of the injury. According to the Complaint, Defendants "described the Vessel as a long range ocean going motor yacht, suitable for use in normally expected weather conditions on the open ocean." (Compl. ¶ 11.) At the time of the Vessel's sinking, the Plaintiffs were on the Vessel "in the waters of the United States off the coast of Georgia in 3-5 ft. seas." (Compl. ¶ 12.) The Complaint, taken as a whole, sufficiently alleges that the Vessel was intended for "long range" trips in "normally expected weather conditions" and that at the time of the incident, Plaintiffs were using the Vessel in accordance with that intended use. Third, the Complaint alleges that the defective condition — in this case, a defective escape hatch — existed when transferred from Defendants, who had failed to "properly secure[]" it.

(Compl. ¶¶ 13, 28.). Finally, the Complaint properly alleges that the defective escape hatch caused the Vessel's sinking and the resulting injuries. (Compl. ¶ 28.)

  iii. *Magnuson-Moss Warranty Act*

It is unclear from the Complaint whether Plaintiffs allege any violations of the substantive portions of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq. The Complaint enigmatically states, "In addition to the warranties stated above, the vessel was covered by Defendants' limited warranty which is a written warrant under the Act." (Compl. ¶ 35.) The Court is at a loss as to what "limited warranty" — apart from the express and implied warranties already discussed in the Complaint — Plaintiffs refer.

What is clear is that Plaintiffs seek damages under the MMWA for breaches of express and implied warranties. The MMWA allows "recovery by a consumer — who prevails in a breach of warranty action — of actual costs and expenses, including attorneys fees." <u>Hines v. Mercedes-Benz USA, LLC</u>, 358 F. Supp. 2d 1222, 1235 (N.D. Ga. 2005). Here, Plaintiffs have a claim for both breaches of express and implied warranties under Florida law. Moreover, they plead facts that allege that Plaintiffs are consumers, Defendants are

manufacturers, and the Vessel is a consumer product under the MMWA, such that the MMWA covers the warranties at hand. <u>See</u> § 2310(d)(1). Plaintiffs thus properly state a claim for damages under the MMWA.

### 3. *Fraud and Unfair Trade Practices Claims*

Plaintiffs' fraud and unfair trade practices claims, like the breach of warranty claims, are governed by state law. Actions alleging fraud and misrepresentation in connection with the sale of a vessel are generally governed by state law, rather than admiralty law. <u>See</u> <u>Camper and Nicholsons, Ltd. v. Yacht Fontainebleau II</u>, 292 F.Supp. 734, 735 (S.D. Fla. 1968)("[A]n action for fraud or misrepresentation in inducing the making of a [boat] charter party has been found to be non-maritime." (citing 1 <u>Benedict on Admiralty</u> § 67)). Because the fraud and unfair trade practices actions arise from the sales contract, the law of the place of the contract — in this case Florida — applies.

#### i. *Fraud*

Under Florida law, a fraud claim must establish that the maker of the misrepresentation had "knowledge that the representation was false" and had "an intention that the representation induce another's reliance." <u>See</u> <u>Wadlington v.</u>

Cont'l Med. Serv., Inc., 907 So. 2d 631, 632 (Fla. 4th Dist. Ct. App. 2005). The Plaintiffs here merely allege that certain representations "were known or should have been known to Defendants to be false." (Compl. ¶ 52.) The Complaint thus does not specifically allege that Defendants had actual knowledge that the representations in question were false, nor does the Complaint allege that Defendants made the representations with the intent to induce the Plaintiffs' reliance. Because the Complaint fails to allege two required elements of fraud under Florida law, the Plaintiffs' fraud action fails.

ii.    *Florida Deceptive and Unfair Trade Practices Act*

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." 263 F.R.D. 687, 692 (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006)). Plaintiff's complaint fails to allege the element of causation. This court is bound by the decisions of the Eleventh Circuit, which has held that "the [FDUTPA's] causation requirement is resolved based on how an objective reasonable person would behave under the circumstances." Fitzpatrick v. Gen. Mills, Inc., 263 F.R.D. 687, 695 (S.D. Fla. 2010)(citing Cold Stone

Creamery, Inc. v. Lenora Foods I, LLC, 332 Fed.Appx. 565, 567 (11th Cir. June 3, 2009). In short, "the issue when considering a claim under the Act is whether the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC, 946 So. 2d 1253, 1258 (Fla. 1st Dist. Ct. App. 2007). Accordingly, to prove the causation element of a FDUTPA claim, a plaintiff must "prove only that the deceptive practice would — in theory — deceive an objective reasonable consumer." Fitzpatrick, 263 F.R.D. at 695.

Plaintiffs' Complaint only alleges that "Plaintiffs relied on these [false] representations, to their detriment." (Compl. ¶ 52.). Plaintiffs do not address the reasonable consumer standard adopted by the Eleventh Circuit. Plaintiffs therefore fail to plead the causation element of their FDUTPA claim.

Plaintiffs' Motion for Default Judgment is therefore denied as to Plaintiffs' fraud and FDUTPA claims.

**DAMAGES**

Plaintiffs have alleged facts and law in the Complaint sufficient to establish liability on their strict product liability, breach of express warranty, and breach of implied

warranty claims. Plaintiffs have also brought a proper claim for damages under the MMWA.

In deciding a motion for default judgment, however, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010). Indeed, awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). While "[a]n evidentiary hearing is not a per se requirement," the Eleventh Circuit has made clear that "such hearings are required in all but 'limited circumstances,' as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." S.E.C. v. Smyth, 520 F.3d 1225, 1232 n.13 (11th Cir. 2005)(quoting KPS & Assocs. v. Designs by FMC, Inc., 318 F.2d 1, 21 (1st Cir. 2003)).

The "limited circumstances" that justify a default judgment for money damages without a hearing are not present

in this case. Plaintiffs seek "actual damages, consequential damages, litigation costs, pre-judgment interest, and attorneys fees," as set forth in an affidavit of Plaintiff Guy J. Carrier. (Dkt. No. 63.) Carrier's affidavit provides a dollar amount for various categories of the damaged property and costs incurred as a result of the Vessel's sinking. For example, the affidavit lists "clothes, BOSE headphones, car nav system, etc." as "Personal Effects" that apparently had a value of $4,675. (Dkt. No. 65.) Additionally, Plaintiffs seek "punitive damages in the amount of three times the purchase price of the vessel, or $1,455,000." (Dkt. No. 63). Neither the methodology Plaintiffs used to calculate the value of lost items nor the appropriateness of $1,455,000 in punitive damages are clear from the affidavit or motion.

Given the generality of the damage calculations and the fact that Plaintiffs seek substantial punitive damages, a default judgment for money damages is not appropriate without a damages hearing.

**CONCLUSION**

For the reasons stated above, the Plaintiffs' Motion for Default Judgment and/or Summary Judgment is **GRANTED** in part to the extent it seeks a judgment in favor of

Plaintiffs regarding Defendants Jordaan and Aventure's liability as to the Counts for (1) strict liability, (2) breach of express warranty, (3) breach of implied warranty, and (4) violations of the MMWA. Plaintiffs' Motion for Default Judgment and/or Summary Judgment is **DENIED** regarding Defendants' liability as to the Counts for (1) negligently inflicted emotional distress, (2) fraud, and (3) violations of the FDUPTA. It is further ordered that a money award be deferred until the conclusion of a hearing on damages. Said hearing is hereby scheduled to occur on November 15, 2010, at 2 p.m.

        **SO ORDERED**, this 22nd day of September, 2010.

 

                                      _____

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA